IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2019

**STATE OF TENNESSEE v. RASHAN LATEEF JORDAN**

**Appeal from the Criminal Court for Knox County**
**No. 100496   Bobby R. McGee, Judge**

_____

**No. E2018-00471-CCA-R3-CD**

_____

Defendant, Rashan Lateef Jordan, appeals from his conviction for the sale of more than 0.5 grams of cocaine within one thousand feet of a childcare agency.  Defendant was sentenced to 15 years for his conviction.  On appeal, Defendant contends: (1) that the trial court erred by not granting his motion to dismiss for lack of a speedy trial; (2) the jury instructions were inadequate and failed to include a lesser included offense; and (3) the jury instructions were confusing to the jury and in attempting to make clarifications, the trial court unduly influenced the jurors.  Having reviewed the parties' briefs and the entire record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Hoai R. Robinette, Knoxville, Tennessee, for the appellant, Rashan Lateef Jordan.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Sara Keith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Following a jury trial, Defendant was convicted in count one of the sale of more than 0.5 grams of cocaine in a drug-free zone.  The trial court dismissed the jury before it announced its verdict in count two, reasoning that count two would merge into count one. A judgment was entered reflecting that Defendant was found guilty of delivery of more than 0.5 grams of cocaine in a drug-free zone; however, the trial court subsequently entered a corrected judgment, dismissing count two.  The trial court sentenced Defendant to 15 years for his sale of cocaine conviction.

### Procedural history

*Motion to Dismiss*

The parties agree that Defendant was originally charged by presentment on May 18, 2010; however, the presentment is not included in the record on appeal. A capias was issued for Defendant's arrest on the same date. The parties also agree that Defendant was arrested on an unrelated charge in Georgia and that he was transferred to the custody of the Tennessee Department of Correction (TDOC) sometime at the end of 2010 as a result of a parole violation issued in May, 2010. Defendant became aware of the charges in this case at a parole violation hearing on December 3, 2010. In November, 2011, Defendant filed a motion for speedy trial, but that motion is also not included in the record. Defendant was arraigned on January 1, 2012.

On July 18, 2012, Defendant filed a motion to dismiss, claiming that his right to a speedy trial had been violated. At a hearing on Defendant's motion, Defendant testified that he was never arrested on the charges in the presentment. He testified that he was arrested for an unrelated parole violation, and he only learned about the presentment during the parole revocation proceedings. Defendant testified that he had not been served with anything indicating that there were pending charges against him in Knox County. Following a parole revocation hearing, Defendant asked family members to call the Knox County Sheriff's Office to ascertain the status of the charges. He also testified that he wrote a letter to the clerk "at the Knox County Jail," and he filed a motion for speedy trial and requested a bill of particulars to determine the status of the case. Defendant testified that his family members retained counsel to inquire about the charges, but the attorney was told there were "no charges for [Defendant] in Knox County."

Defendant testified that he was with Andrew Howell, Rod Strickland, and Deshawn O'Keefe on the day of the offense. He testified that Mr. O'Keefe died in January, 2012. He claimed that Mr. O'Keefe "had very pertinent information pertaining to this case." Defendant testified that on the date of the offense, they were at an establishment called "Game Over." Defendant and Mr. O'Keefe wanted "some powder" to consume for themselves. At around 7:50 p.m., Defendant called Nathan Adebayo, the State's confidential informant, to set up a drug purchase. When Mr. Adebayo arrived, Defendant, Mr. O'Keefe, and Mr. Howell walked outside and spoke with him. Defendant and Mr. Adebayo then left the group and got into Defendant's car. Defendant and Mr. Adebayo were the only people in the vehicle during the transaction. Defendant testified that Mr. Adebayo pulled drugs out of his underwear, and Defendant "asked him for a 20 for [his] face." Mr. Adebayo tore off a piece of a plastic bag and filled it with cocaine for Defendant. Defendant and Mr. O'Keefe consumed the cocaine outside of Game Over.

Defendant testified that Mr. Howell died "in January." Mr. Howell was not involved in the drug transaction, but he "was hanging out with" Defendant and Mr. O'Keefe. Defendant testified that he and Mr. O'Keefe were the only ones who consumed cocaine, but there were "several people" outside with them, including Mr. Howell.

The State argued that Defendant did not suffer any prejudice from the delay. The State acknowledged that Defendant was not served with the presentment until January, 2012, but the State argued that Defendant was aware of the charges in December, 2010. Additionally, the State argued that the delay did not cause Defendant's incarceration because he was already incarcerated on unrelated charges.

Following the hearing, the trial court denied Defendant's motion. On October 30, 2012, the Knox County Grand Jury issued a superseding indictment charging Defendant with one count of sale of more than 0.5 grams of cocaine in a drug-free zone and one count of delivery of more than 0.5 grams of cocaine in a drug-free zone.

Defendant filed a second motion to dismiss on February 14, 2013, again alleging a violation of his right to a speedy trial. Defendant attached to his motion the death certificates of two potential witnesses, Andrew Howell, who died on April 21, 2012, and Deshawn O'Keefe, who died on January 2, 2012. The trial court conducted a hearing on the motion on December 2, 2013. At the outset of the hearing, the trial court noted that it had "previously considered and made findings with regard to the length of the delay and the defendant's assertion of the right and the prejudice suffered." The court noted, however, that it "ha[d] not made adequate findings with regard to the reasons for the delay."

Officer John Holmes, of the Knoxville Police Department, testified that he was involved in a controlled buy of cocaine between Defendant and the confidential informant on March 25, 2010. Officer Holmes testified that the Knox County Grand Jury issued a presentment charging Defendant with the sale and delivery of cocaine on May 18, 2010. Shortly thereafter, Officer Holmes learned that Defendant had fled to Georgia, and a violation of parole had been filed against him. On July 5, 2010, Officer Holmes learned that Defendant was suspected to be involved in a robbery and shooting in Macon, Georgia. Defendant was charged in relation to that event, but the charges were later dismissed. Defendant was hospitalized in Georgia for gunshot wounds he sustained during the incident.

Officer Holmes learned that Defendant was in TDOC custody "sometime during December" 2010. Officer Holmes testified that Defendant was made aware of the charges in this case at a parole violation hearing on December 3, 2010. On March 15, 2011, Officer Homes attended a parole violation hearing at which Defendant was informed via teleconference of the charges against him. Officer Holmes testified that he explained the charges to Defendant. Officer Holmes assumed Defendant had been served

after the December, 2010 parole violation hearing. Officer Holmes learned that Defendant had never been served with the presentment when Defendant was finally arraigned in January, 2012. Officer Holmes testified "[i]t's not the typical response" for the charging officer to ensure that the presentment is served upon a defendant.

Following a hearing, the trial court denied the motion. The trial court found that the State was negligent in not having Defendant arraigned sooner, but that any prejudice as a result of this negligence was "fairly minor." The trial court stated:

> [T]he only actual prejudice that's been offered is the death of two of the potential witnesses.
>
> The Court has found before and does still find that these were not witnesses to the crime itself. The – what's been presented to this Court thus far is this: They were – the defendant had two friends with him that day. They had some conversation about drugs and the defendant called someone to set up some sort of a drug deal.
>
> Of course, it's going to be his theory that he was buying and not selling. And that will be the crux of the case. And neither of the defendant's witnesses were present to see what happened and could not ever have testified to what actually went on in the car when the defendant and the seller, or the buyer, depending on who you believe here – they could never testify as to what actually happened.

### Evidence presented at trial

On March 25, 2010, members of the Repeat Offender Squad of the Knoxville Police Department used a confidential informant to conduct a controlled purchase of cocaine at an establishment known as Chubby's in Knoxville, Tennessee. The confidential informant (CI) was identified by Officer John Holmes as Nathaniel Adebayo. Mr. Adebayo was acting as a CI following an arrest for drug possession as part of a deal for a less severe sentence. In talking with Mr. Adebayo, Officer Holmes "threw out some names" of individuals suspected of dealing drugs in town to see if Mr. Adebayo knew any of the individuals. Defendant's name was one of these names, and Mr. Adebayo stated that he knew Defendant.

On March 25, Officer Holmes monitored communication between Mr. Adebayo and Defendant. Defendant called Mr. Adebayo earlier that day, but Mr. Adebayo had not answered. Mr. Adebayo called Defendant back, and Defendant told him to meet at "the spot," which was agreed upon as Chubby's. Officer Holmes supplied Mr. Adebayo with a recording device and $1,100 in cash, which was photographed with serial numbers visible. Officer Holmes searched both Mr. Adebayo's person and his car and found

nothing suspect. Mr. Adebayo drove his personal vehicle to Chubby's while officers monitored from a nearby intersection. The officers could not see the transaction from their vantage point, but monitored through the recording device.

Mr. Adebayo exited his vehicle at Chubby's and walked inside, asking an unidentified individual where Defendant was. Mr. Adebayo and Defendant met in the restaurant and walked outside, getting into Defendant's car, which was a rental. Mr. Adebayo testified that Defendant provided an ounce of powdered cocaine in exchange for $1,100. On the recording, Defendant told Mr. Adebayo to "give me a piece of that for my face." Mr. Adebayo testified that he allowed Defendant to take $20 worth of cocaine from the bag he had just purchased. Defendant refunded Mr. Adebayo $20. Defendant then consumed the cocaine in the car. The transaction took place within 1,000 feet of Abundant Love Childcare, a licensed childcare facility at the time of the offense.

Following the transaction, Mr. Adebayo returned to the meeting point and gave the officers a bag containing white powder, later confirmed by Tennessee Bureau of Investigation to be 21.0 grams of cocaine, and two $10 bills. The serial numbers of the two $10 bills matched the serial numbers from the cash given to Mr. Adebayo prior to the transaction.

Defendant testified that he was hanging out with Deshawn O'Keefe and Andrew Howell on March 25, 2010. The three of them discussed buying powder cocaine for personal consumption. Defendant claimed that he and Mr. O'Keefe agreed to go "half-in" on twenty dollars of cocaine. According to Defendant, he did not sell cocaine to Mr. Adebayo, but rather Mr. Adebayo sold cocaine to Defendant. Defendant stated that when Mr. Adebayo entered Defendant's vehicle, Mr. Adebayo pulled an ounce of powdered cocaine out of his underwear and sold $20 worth of cocaine to Defendant. Defendant testified he then exited the vehicle and consumed the cocaine outside of Chubby's, giving half to Mr. O'Keefe. Defendant claimed that both Mr. O'Keefe and Mr. Howell could confirm he was buying $20 worth of cocaine from Mr. Adebayo for personal use rather than selling an ounce of cocaine to Mr. Adebayo.

## *Analysis*

### *Speedy trial*

Defendant asserts that he was denied the right to a speedy trial. Defendant argues that the 20-month delay between the return of the presentment on May 18, 2010, and his arraignment on January 6, 2012, was excessive; that the delay was intentional by the State in order to gain a tactical advantage; and that he was prejudiced by the delay. The State responds that the trial court properly denied Defendant's motions.

The right to a speedy trial is guaranteed to criminal defendants by the Sixth Amendment of the United States Constitution. In Tennessee, this right is established by both Article I, Section 9 of the Tennessee Constitution and Tennessee Code Annotated §40-14-101. The United States Supreme Court identified three interests the right to a speedy trial is intended to protect in *Barker v. Wingo*: (1) the prevention of oppressive pre-trial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) limiting the possible impairment of the defense. 407 U.S. 514, 530 (1972). In *Doggett v. United States*, the Supreme Court further determined that of these forms of prejudice, "the most serious is the last, because of the inability of a defendant to prepare his case skews the fairness of the entire system." 505 U.S. 647, 654 (1992).

In determining whether a criminal defendant's right to a speedy trial has been violated, the presence of a delay is not determinative of prejudice. Under *Barker*, four factors are to be balanced in a speedy trial inquiry in light of the individual case and circumstances: (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant in light of the facts and circumstances of the particular case. *State v. Patrick Lynn Crippen*, No. E2011-01242-CCA-R3-CD, 2012 WL 5397109 at *3 (Tenn. Crim. App. 2012) (quoting *Barker*, 407 U.S. 530). On appeal, the trial court's decision is reviewed for abuse of discretion. *Id.* (quoting *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005)).

In the case *sub judice*, the State concedes that a twenty-month-long delay is sufficient to trigger a speedy trial inquiry, but not long enough on its own to prove prejudice. In *State v. Matthew Melton Jackson*, this court determined a delay of three years between indictment and Defendant's arraignment was not necessarily unreasonable. No. M2005-01374-CCA-R3-CD, 2006 WL 1896350, at *3 (Tenn. Crim. App. July 7, 2006), *perm. app. denied* (Tenn. Nov. 13, 2006). The State further asserts that Defendant was not improperly incarcerated during the delay because he was already in TDOC custody due to a separate parole violation. Additionally, Defendant was released on bail prior to trial. Therefore, Defendant was not subject to oppressive pre-trial incarceration.

The trial court determined the reason for the delay was the State's "ordinary bureaucratic" negligence. The trial court found no evidence that the delay was meant to gain a tactical advantage over Defendant. Defendant contends the delay was intentional. He points to the testimony by Officer Holmes at trial that he "didn't do anything" to expedite service or arraignment of Defendant. The trial court found, however, that is not the charging officer's responsibility. Defendant asserts in his brief that the delay "can only be attributed to [the State]." However, Defendant went to Georgia, where he remained for months after being charged.

Defendant also contends that the State attempted to gain a tactical advantage over him by delaying his arraignment to deny him the opportunity to have his sentence in this case run concurrently with his sentence from a prior conviction. However, as the State

points out, Defendant was ineligible for concurrent sentencing because he committed the offense on trial while released on parole from his prior conviction. There is nothing in the record to suggest the State aimed to deny Defendant of a sentencing option for which he was eligible.

As for the third *Barker* factor, the trial court found that Defendant properly asserted his right to a speedy trial. The third factor is not at issue on appeal.

Defendant asserts that he was prejudiced by the delay because his ability to prepare a defense was hindered by the deaths of two of his key witnesses. Defendant argues that those witnesses could have corroborated his version of the exchange between himself and Mr. Adebayo, wherein he bought cocaine, rather than sold cocaine, for his and Mr. O'Keefe's personal use. However, neither Mr. O'Keefe nor Mr. Howell were present for the interaction between Defendant and Mr. Adebayo. Their testimony would have been merely cumulative to Defendant's. The deaths of those potential witnesses did not adversely affect Defendant's ability to present his defense. Further, there is no evidence that an agreement between Defendant and Mr. O'Keefe to split $20 worth of cocaine disproves the sale by Defendant to Mr. Adebayo. The State presented proof at trial that Defendant sold an ounce of cocaine to Mr. Adebayo and then bought back $20 worth for his personal consumption. The $20 (consisting of two $10 bills) in Mr. Adebayo's possession when he returned to the officers following the transaction with Defendant had serial numbers that matched serial numbers of two $10 bills provided by the officers just prior to the transaction. Defendant's testimony and his assertions on appeal do not address what Mr. O'Keefe or Mr. Howell could explain as to how Defendant had two $10 bills in his possession prior to meeting with Mr. Adebayo, when those two $10 bills had been given to Mr. Adebayo by the officers prior to the transaction inside Defendant's vehicle.

We conclude that the trial court did not abuse its discretion in denying Defendant's motions to dismiss for violation of a speedy trial. Defendant is not entitled to relief on this issue.

*Lesser-included offense*

Defendant asserts on appeal that the trial court erred by not instructing the jury that the sale of more than 0.5 grams of cocaine was a lesser-included offense of the sale of more than 0.5 grams of cocaine in a drug-free zone. The State contends that the sale of more than 0.5 grams of cocaine is not a lesser-included offense of the sale of the same amount in a drug-free zone, because the drug-free zone statute, T.C.A. § 39-17-432, sets forth a sentencing enhancement for certain drug offenses. Its application does not create a greater offense that would render the sale of a drug outside of a drug-free zone a lesser-included offense. We agree with the State.

- 7 -

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of:

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*State v. Burns,* 6 S.W.3d 453, 466-67 (Tenn. 1999).

Tennessee Code Annotated section 39-17-432 provides in part:

(a) It is the intent of this section to create drug-free zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and danger that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a drug-free zone are necessary to serve as a deterrent to such unacceptable conduct.

(b)(1) A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds of facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or

private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

T.C.A. § 39-17-432(a)-(b)(1). Defendants who are sentenced under subsection (b) of the statute "shall be required to serve at least the minimum sentence for [their] appropriate range of sentence." *Id*. § 39-17-432(c).

In *State v. Smith*, this court adopted the view that, "Tenn. Code Ann. § 39-17-432 does not itself criminalize manufacturing, delivering, selling, or possessing a controlled substance; it merely imposes a harsher penalty for violations of Tenn. Code Ann. § 39-17-417 occurring within a school zone." *State v. Smith*, 48 S.W.3d 159, 167-68 (Tenn. Crim. App. 2000) (citing *State v. Silva-Baltazar*, 886 P.2d 138, 142 (Wash. 1994). Defendant is not entitled to relief on this issue.

While we agree with the State that sale or delivery of cocaine (of any weight) is not a lesser included offense of sale or delivery of cocaine (of any weight) within 1,000 feet of a child care agency, we note three parts of the written jury instructions which are an exhibit in the record. First, the written instructions (the transcript of the jury instructions is not in the record) provided that *sale or delivery of cocaine less than 0.5 grams is* a lesser included offense of sale or delivery of *more than* 0.5 grams of cocaine within 1,000 feet of a child care agency.

Also, the jury verdict form specifically states that sale or delivery of *more than 0.5 grams* of cocaine is a lesser included offense of sale or delivery of more than 0.5 grams of cocaine within 1,000 feet of a child care agency. There is nothing in the record indicating that the State objected to these provisions in the jury instructions or the verdict forms, despite the fact the State on appeal asserts that sale or delivery of any amount of cocaine in this case is not a lesser included offense of sale or delivery of any amount of cocaine within 1,000 feet of a child care agency.

Finally, the trial court's written jury instructions regarding the elements of the indicted offenses charged the jury in accordance with the State's position on the issue in this appeal. For the jury to convict Defendant of the indicted charge, the jury was instructed that the State must prove beyond a reasonable doubt three elements, paraphrased herein:

(1)  Defendant sold or delivered more than 0.5 grams of cocaine;

(2)  Defendant acted knowingly in doing so; and

(3)  The sale or delivery occurred within 1,000 feet of a child care agency.

While the drug free zone provision only imposes a harsher punishment, it still must be proved beyond a reasonable doubt to the jury. *See Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004) (proof of any fact used to enhance a sentence, other than a prior conviction, must be proven to the jury beyond a reasonable doubt.)

Assuming the trial court verbally conveyed what is in the written instructions, the wording of the "elements" of the offenses complies with Tennessee Pattern Instructions – Criminal 31.01. This instruction properly informs the jury that it must find a defendant guilty of each element beyond a reasonable doubt. As implied in this instruction and considered with Tennessee Pattern Instruction – Criminal 43.06, if a jury finds as to any essential element the State has failed to prove the element beyond a reasonable doubt, or the jury has a reasonable doubt that defendant committed what is alleged in the element, the jury must acquit as to that charge. Even though case law is well settled that the "drug free zone" statutory provision is not an element of the crime but merely a sentencing enhancement, the current language of the pattern jury instruction arguably would allow a defendant to argue to the jury that the State's failure to prove the "drug free zone" element beyond a reasonable doubt requires a verdict of not guilty.

*Jury instructions*

Defendant asserts on appeal the jury instruction and verdict forms were confusing, and in attempting to clarify, the trial court unduly influenced the jury to render a guilty verdict to the crime charged instead of a lesser-included offense. The State responds that Defendant has waived this issue by failing to include in the record on appeal a transcript of the trial court's instructions to the jury. The State further asserts that, regardless of waiver, the jury instructions fairly and accurately set forth the applicable law, and the trial court did not improperly influence the jury. We agree the issue is waived.

Failure to include a transcript of the jury instructions waives a challenge to the jury instructions. Rule 24(b) of the Tennessee Rules of Appellate Procedure provides that "the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See also Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). The record in this case contains a copy of the jury's verdict form and the written instructions provided to the jury by the trial court. Without a transcript of the trial court's oral instructions to the jury, however, it is impossible to discern whether the written instructions conform to the instructions that were read to the jury. *See State v. Marcus Anderson*, No. W2011-00139-CCA-R3-CD, 2012 WL 3871409, at *2 (Tenn. Crim. App. Sept. 5, 2012). We agree with the State that Defendant has waived any challenge to the jury instructions by failing to include a transcript of the jury instructions.

Regarding Defendant's challenge to the jury verdict forms, the record shows that the jury convicted Defendant in count one of "Sale of a Controlled Substance" and affixed a fine of $160,000. Below the jury's verdict of guilty of the offense of "Sale of a Controlled Substance," the verdict form for count one provides:

> IF YOU FIND THE DEFENDANT GUILTY OF A GREATER OFFENSE, YOU DO NOT NEED TO CONSIDER ANY OF THE FOLLOWING LESSER INCLUDED OFFENSES:
>
> . . . . Sale and/or Delivery of Cocaine less than .5 grams [w]ithin 1,000 feet of a Child Care Agency, a lesser[-]included offense.
>
> . . . .
>
> . . . . "Sale and/or Delivery of Cocaine less than .5 grams, a lesser[-]included offense.
>
> . . . .
>
> . . . . "Sale and/or Delivery of Cocaine More than .5 grams, a lesser[-]included offense.
>
> . . . .
>
> . . . . "Simple Possession, a lesser[-]included offense."
>
> . . . .
>
> . . . . "Casual Exchange, a lesser[-]included offense."

The trial court attempted to clarify the jury's verdict:

> THE COURT: Ladies and gentlemen of the jury, I need you to clarify a point. The way we structured the guilty – I mean the plea form – the verdict form, you were given the opportunity to make findings that the defendant was guilty of delivery of cocaine or sale of cocaine in an amount less than .5 grams, and you were given the chance to make a finding or find him guilty of sale or delivery of cocaine within, or outside, of 1,000 feet of a childcare agency.
>
> Based on your verdict – based on the fact that you found him guilty of the greater offense and not of any of the lesser-includeds, this court is taking your – your verdict to mean that you are finding the defendant

guilty of sale of cocaine in an amount greater than .5 grams in a childcare zone.

Mr. [jury foreperson], is that – is that what the jury found the defendant guilty of?

[Jury foreperson]: Yes.

All twelve jurors raised their hands in agreement when asked if they agreed with the verdict. Noting that the verdict form did not state that the jury found Defendant guilty of sale of more than 0.5 grams of cocaine within a drug-free zone, the State requested a new verdict form. The prosecutor stated, "it has them finding him guilty of sale of a controlled substance and showing that the lesser-included is the sale of less than – but it does not actually address the drug-free – or the drug-free zone." The prosecutor stated, "[i]t's just sale of a controlled substance." Defense counsel responded, "[i]t's on the record, Your Honor." The trial court then dismissed the jury.

Defendant asserts that the trial court improperly influenced the jury when it asked the jury to clarify its verdict. Defendant claims that in the presence of confusion, the trial judge was required to send the jury back to continue deliberation and return to announce its verdict again. However, Defendant did not make any objection at the time of clarification. Also, Defendant did not ask the trial court to have the jury return to the jury room for further deliberations. This issue is waived. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Defendant is not entitled to relief on this issue.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE